UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN DARIO GARCIA, Jr., <br><br> Plaintiff, <br><br> v. <br><br> SLEELEY, et al., <br><br> Defendants. | Case No.: 3:14-cv-01525-JLS-PCL <br><br> **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE RE: DEFENDANTS' MOTION TO DISMISS AND PLAINTIFF'S MOTION TO SERVE A DEFENDANT [Docs. 92, 93, 94; Doc. 90]** |

## I. INTRODUCTION

Before this Court are defendants P. Velardi; R. Walker and I. Sedighi; and R. Scharffenberg, L. Meritt, L. Sheppard, and E. Worman all moving to dismiss the first amended complaint ("FAC") in three respective motions. (Docs. 92, 93, 94.) Defendants Meritt, Scharffenberg, Sheppard, and Worman (collectively "SATF Defendants") have brought their motion on the grounds that the case has been filed in an improper venue and there has been a misjoinder of claims and parties. (Doc. 94 at 13, 18.) Alternatively, the SATF Defendants move for dismissal on the grounds that the FAC does not state claims against them for which relief can be granted. (*Id.* at 21.) Defendant Velardi brought her motion based solely on the FAC's failure to state claims against her for which relief can be granted. (Doc. 92.) Finally, Defendants Sedighi and Walker (collectively with Velardi

"RJD Defendants") brought their motion also based solely on the FAC's failure to state claims against them for which relief can be granted. (Doc. 93.)

In his FAC, Plaintiff RUBEN DARIO GARCIA JR. ("Plaintiff") asserts five claims against both the SATF Defendants and RJD Defendants: (1) Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment was violated; (2) Plaintiff suffered a retaliation after exercising his right to free speech; (3) Plaintiff's Equal Protection rights under the Fourteenth Amendment were violated; (4) Plaintiff's civil rights were violated as the result of a conspiracy; and (5) Plaintiff suffered after being subjected to an intentional infliction of emotional distress. (Doc. 43 at 24-31.)

The Honorable Janis L. Sammartino referred this matter to the undersigned Judge for Report and Recommendation pursuant to 28 U.S.C. section 636(b)(1)(B) and Local Civil Rule 72.1(c)(1)(d). After a thorough review of the motions, oppositions, and other relevant pleadings, the Court recommends relief be **GRANTED IN PART AND DENIED IN PART** as discussed below.

## II. BACKGROUND

Plaintiff is a California state inmate in custody of the California Department of Corrections and Rehabilitation (CDCR). (ECF No. 43 at 6.)

### A. Richard J. Donovan Correctional Facility

In 2007, Plaintiff was incarcerated at the Richard J. Donovan Correctional Facility (RJD) in San Diego, California. (*Id.*) During his incarceration at RJD, Plaintiff complained to the California Prison Health Care Services (CPHCS) that he suffered severe pain in his right hand and elbow, which prevented him from performing everyday activities. (*Id.*) In response, the CDCR contracted orthopedic specialists who diagnosed Plaintiff with carpal tunnel syndrome. (*Id.* at 6-7.) Dr. Smith, an orthopedic surgeon, performed surgery on Plaintiff's right wrist, attempting to relieve pressure and alleviate Plaintiff's pain. (*Id.* at 7.) To treat any future pain, Dr. Smith prescribed Tylenol Codeine #3, Motrin, and acetaminophen. (*Id.*) Despite taking these medications, Plaintiff still complained of pain in his right wrist and also complained of side effects from the

2

medications, such as stomach cramps. (*Id.* at 7.) Dr. Smith did not renew Plaintiff's prescription for Tylenol Codeine #3 and recommended Plaintiff return to see Dr. Smith or another orthopedic specialist if he encountered any further problems. (*Id.*)

After the surgery, Plaintiff continued to complain of pain from the carpal tunnel syndrome and the medications' side effects, and requested either medications without side effects or to see an orthopedic specialist. (*Id.* at 8.) In response, the CPHCS assigned defendants Sedighi and Walker, among other nonmoving defendants, as Plaintiff's primary care providers ("PCPs"). (*Id.*) PCPs have access to inmates' health records, and in Plaintiff's case, his PCPs were aware that in addition to the pain relief medications for his carpal tunnel syndrome, Plaintiff was prescribed anti-psychotic medications for mental illness. (*Id.* at 9.) Although Plaintiff continuously complained of pain, Plaintiff's PCPs nevertheless denied his requests to see an orthopedic specialist and instead elected to prescribe medication. (*Id.*)

In an attempt to treat Plaintiff's symptoms, the PCPs prescribed painkillers acetaminophen, Motrin, naproxen, and despite Plaintiff's positive test for depression, anti-psychotic medications Elavil, amitriptyline, and neurotin.[1] (*Id.* at 10-11.) According to Plaintiff, both Elavil and Amitriptyline are powerful anti-depressants. (*Id.* at 11-12.) After taking the prescribed medications, Plaintiff suffered abdominal cramps, nausea, blurred vision, and fatigue. Plaintiff had difficulty waking up for breakfast and lunch as well. Plaintiff considered all of these things to be the medications' side effects. (*Id.* at 12.)

---

[1] When prescribing medication, PCPs may refer to the Department Pain Management Guidelines. (Doc. 43 at 9.) The Secretary of the CDCR implemented these guidelines to standardize pain management practices in prison facilities, but prison officials are not required to follow them. CAL. CORR. HEALTH CARE SERVS., CARE GUIDES/GUIDELINES (2009). ("These care guides do not establish either a standard of care, or the minimally adequate care which meets constitutional standards.") The Pain Management Guidelines provide that a CPHCS clinician may prescribe anti-depressants if the treatment is solely for pain management and if the inmate does not test positive for depression. (Doc. 43 at 10.)

In 2011, Plaintiff again requested to see an orthopedic specialist and for a change in medications that would not subject him to severe side effects. (*Id.*) The CPHCS assigned RJD Defendant Walker and other nonmoving defendants as Plaintiff's new PCPs. (*Id.* at 12-13.) The new PCPs first canceled the ibuprofen, acetaminophen, and aeurontin prescriptions, replacing them with prescriptions for indomethacin, notriptyline, and gabapetnin. (*Id.*) According to Plaintiff, both indomethacin and notriptyline are powerful anti-depressants. (*Id.* at 13-14.) These new medications caused Plaintiff to experience the same side effects he had complained of before. (*Id.* at 13.) In addition to the new prescriptions, the new PCPs also had Plaintiff undergo a nerve conduction test which confirmed nerve abnormalities in his right wrist. (*Id.* at 14.)

Plaintiff continued to complain to prison officials about the medications' side effects, but RJD Defendant Walker denied all of Plaintiff's requests for different medication and to see an orthopedic specialist. (*Id.*) On May 7, 2012, Plaintiff filed a petition for writ of habeas corpus with a state court, seeking to redress his complaints. (*Id.*) Three days later, RJD Defendants Walker and Velardi, as well as other nonmoving defendants, cancelled Plaintiff's prescriptions. (*Id.*) These defendants justified their actions by stating (1) Plaintiff's blood test analysis showed that he was not taking gabapetnin as prescribed; (2) Plaintiff routinely refused the recommended treatments; (3) Plaintiff was so disruptive during his regular visits that they could not examine him; and (4) Plaintiff failed to show up to follow up treatments. (*Id.* at 16.) Plaintiff has disputed the truth of all these assertions. (*Id.* at 17.) After this cancellation of his prescriptions, Plaintiff continued to file grievances with prison officials, and the CPHCS reassigned as PCPs RJD Defendants Walker and Velardi, as well as other nonmoving defendants, who again denied Plaintiff's request to consult an orthopedic specialist and his request for pain relief medication. (*Id.* at 15.) Plaintiff received no further prescriptions during the remainder of his incarceration at RJD.

///

B. California State Prison Substance Abuse Treatment Facility

On May 28, 2014, Plaintiff was transferred to the California State Prison Substance Abuse Treatment Facility (SATF) in Corcoran, California. (*Id.* at 18.) At SATF, Plaintiff was diagnosed with both chronic carpal tunnel syndrome and chronic psychiatric disorders. (*Id.* at 18-19.) The CPHCS assigned the SATF Defendants to Plaintiff as his PCPs. (*Id.* at 19.) Similar to the RJD Defendants, the SATF Defendants had access to Plaintiff's medical history and referred to the Pain Management Guidelines when prescribing medications to Plaintiff. (*Id.* at 18-19.) Initially, the SATF Defendants prescribed Ibuprofen and Acetaminophen, but these medications did not effectively treat Plaintiff's carpal tunnel syndrome, and he again suffered from the medications' side effects. (*Id.* at 21.) To alleviate the side effects, the SATF Defendants prescribed ranitidine. (*Id.* at 21-22.) Nevertheless, Plaintiff continued to complain, requesting medication that would relieve the pain without causing side effects. (*Id.* at 22.) In addition to the first three prescriptions, the SATF Defendants prescribed nortriptyline, oscarbazepine, and Effexor, all of which are powerful anti-depressants, according to Plaintiff. (*Id.* at 22-23.) Plaintiff asserts the SATF Defendants knew he was prescribed Prozac for his mental illness, and the SATF Defendants were "clearly aware" the drug interaction between Prozac, nortriptyline, oscarbazepine, and Effexor "could be fatal." (*Id.*) Plaintiff continued to suffer the aforementioned physical side effects, as well as new mental side effects including confusion, anxiety, and depression. (*Id.* at 23.)

On either October 5 or 6, 2015, Plaintiff attempted to commit suicide. (*Id.*) Plaintiff asserts his depression and anxiety compelled this suicide attempt. (*Id.*) After being in "critical condition" multiple times and recovering therefrom, Plaintiff was transferred to an enhanced out-patient inmate treatment and housing program, where he currently continues to serve his sentence. (*Id.* at 24.)

## III. PROCEDURAL BACKGROUND

Plaintiff filed his initial complaint on June 23, 2014. (Doc. 1.) Therein, Plaintiff brought five claims: (1) his Eighth Amendment protections against cruel and unusual

punishment had been violated, (2) Plaintiff's right to free speech and protection from retaliation for exercising such right had been violated, (3) Plaintiff's right to equal protection under the Fourteenth Amendment had been violated, (4) Plaintiff's constitutional rights had been violated pursuant to a conspiracy, and (5) Plaintiff suffered from the intentional infliction of emotional distress. (*Id*. at 5-20.)

As defendants to this initial complaint, Plaintiff named Sleeley, A. Canlas, Martinez, Velardi, R. Clarke, Newton, A Denbela[2], Jodie Rivera, M. Glynn, R. Cobb, R. Olson, and J. Ramirez.[3] (*Id.*) While Plaintiff named these twelve persons as defendants, Plaintiff did not serve each one. Instead, Plaintiff executed service of process upon: Sleeley, A. Canlas, Newton, A. Denbela, Jodie Rivera, M. Glynn, R. Cobb, R. Olson, and J. Ramirez. (Docs. 12-17, 20-22.)

After being served, defendants Sleeley, A. Canlas, Newton, Jodie Rivera, R. Cobb, R. Olson, and J. Ramirez filed a motion to dismiss on June 29, 2015. (Doc. 28.) On July 15, 2015, defendants A. Denbela and M. Glynn joined the motion. (Doc. 32.) This motion was based on Plaintiff's alleged failure to state a claim for which relief could be granted. (Doc. 28 at 1.) On January 21, 2016, a Report and Recommendation was issued recommending the motion be granted, thereby dismissing Plaintiff's initial complaint. (Doc. 36.) This Report and Recommendation was adopted in full on February 23, 2016, and Plaintiff's complaint was dismissed against all moving defendants without prejudice.

---

[2] In the Notice of Joinder, the attorney representing a number of the defendants clarified the defendant named as "A. Dembela" was actually A. Denbela, and had been misnamed by Plaintiff. (Doc. 32 at 1.) Accordingly, the Court will refer to this defendant as "A. Denbela."

[3] There are numerous defendants in this case, some of which were named only in the initial complaint and some only in the FAC. Similarly, while there is some overlap of the defendants, there are some which the Court cannot determine whether the two names refer to the same person or not (*i.e.* "Newton" in the initial complaint and "P. Newton" in the FAC.) Given this confusing presentation of the defendants, the Court will refer to the defendants by their indicated names in the initial complaint and FAC in the Procedural Background section, meaning the name Plaintiff used in his pleadings, including first initials where applicable.

(Doc. 37.) At that point, defendants Martinez, Velardi, and R. Clarke had not yet been served with the initial complaint.

On May 12, 2016, Plaintiff filed his FAC. (Doc. 43.) Therein, Plaintiff again brought same five claims, although he added more facts as well as defendants. (*Id.*) In his FAC, Plaintiff named as defendants: A. Canlas, A. Denbela, Jodie Rivera, M. Glynn, R. Cobb, R. Olson, J. Ramirez, K. Seeley, R. Walker, P. Newton, P. Velardi, M. Martinez, R. Scharffenberg, I. Sedighi, L. Meritt, and L. Sheppard. (*Id.*) As Plaintiff did with his initial complaint, Plaintiff failed to serve all of the named defendants. Service was deemed executed for defendants having been served with the initial complaint, thereby meaning service of process with the FAC was unnecessary for: A. Canlas, A. Denbela, Jodie Rivera, M. Glynn, R. Cobb, R. Olson, and J. Ramirez. Those defendants which were served with the FAC later between January 21, 2018, and February 1, 2018, were: R. Walker, R. Scharffenberg, I. Sedighi, L. Meritt, L. Sheppard,[4] and E. Worman.[5] (Docs. 82-89.) Defendants K. Seeley, P. Newton, P. Velardi, and M. Martinez were not served with the FAC, nor were they served with the initial complaint.

Before this second group of defendants was served, however, defendants R. Olson, K. Seeley, Jodie Rivera, J. Ramirez, A. Canlas, R. Cobb, A. Denbela, M. Glynn, and P. Newton moved the Court for an order entering judgment on the pleadings. (Doc. 50.) These defendants argued Plaintiff failed to sufficiently state facts to support the claims he had alleged. (*Id.*) The motion was granted in part and denied in part by the Court. (Doc. 62.) Specifically, the motion was granted regarding Plaintiff's Eighth Amendment claims against all moving defendants; Plaintiff's First Amendment claims against moving defendants Jodie Rivera, R. Cobb, R. Olson, and J. Ramirez; Plaintiff's Fourteenth Amendment claims against all moving defendants; Plaintiff's conspiracy claim against

---

[4] L. Meritt and L. Sheppard were served twice. (See Docs. 85 and 89 for L. Meritt; see docs. 87-88 for L. Sheppard.)

[5] E. Worman was not named as a defendant in the list of defendnats in Plaintiff's FAC; however, E. Worman was included in the allegations of Plaintiff's FAC. (Doc. 1 at 26.)

moving defendants Jodie Rivera, R. Cobb, R. Olson, and J. Ramirez; and Plaintiff's intentional infliction of emotional distress claim against all defendants. (*Id.*) Thus, the claims were either dismissed altogether or scaled back against the moving defendants.

To clarify the current status of the case at hand, the Court must first address the defendants – primarily the overlapping defendants – as well as the still unserved defendant. Those defendants whose names seem to overlap are: Sleeley and K. Seeley, and Newton and P. Newton. Defendant Sleeley was named and served with the initial complaint while defendant K. Seeley was named in but not served with the FAC. (*See* Docs. 1 and 21; 43.) K. Seeley, however, answered the FAC on June 1, 2016. (Doc. 45.) The Court finds because K. Seeley answered the FAC, despite not having been served, and K. Seeley and Sleeley are both listed as "Medical Doctor" in Plaintiff's intial complaint and FAC, these two defendants are the same person and will hereafter be referred to as "K. Seeley."

Defendants Newton and P. Newton present this same situation. Newton was named and served with the initial complaint, while P. Newton was named in but not served with the FAC. Despite this lack of service, P. Newton still answered the FAC and joined the motion for judgment on the pleadings. Given this responsive manner of P. Newton and the lack of P. Newton having not been served with the FAC, as well as Newton and P. Newton both being characterized as "Dr." in Plaintiff's initial complaint and FAC, the Court finds these defendants are the same person. Thus, the Court will hereinafter refer to this person as "P. Newton."

Defendant Velardi was named in the initial complaint, but not served with this complaint. (Doc. 1.) Defendant Velardi was also omitted from the FAC and was accordingly not served. Based on this, the Court dismissed defendant Velardi from the case. [6] (Doc. 77.) Likewise, defendant Martinez was named, but not served with the initial

---

[6] The Court notes defendants Velardi and P. Velardi are likely the same person; however, because defendant Velardi was dismissed while defendant P. Velardi was properly named and served with the

complaint. (Doc. 1.) M. Martinez, however, was named in Plaintiff's FAC, (Doc. 43), but was not served. Accordingly, the Court dismissed both of these defendants. (Doc. 77.) On February 21, 2018, Plaintiff moved the Court to serve defendant M. Martinez with the FAC. (Doc. 91.) The Court has, at this point, granted numerous extensions of time for Plaintiff to serve the various defendants in this case. (*See* Doc. 90 at 1-2 for history.) Despite these extensions, Plaintiff has still failed to serve defendant M. Martinez. Plaintiff filed his FAC on May 12, 2016. (Doc. 43.) Now, over two years later, defendant M. Martinez is still unserved. The Court finds this delay is inexcusable and thereby **DENIES** Plaintiff's motion to order service upon M. Martinez.

In the same order which dismissed Velardi, issued on January 17, 2018, the Court also dismissed the following defendants for lack of being served: R. Walker, P. Velardi, R. Scharffenberg, I. Sedighi, L. Meritt, L. Sheppard, and E. Worman. (*Id.*) Subsequently, Plaintiff had these seven defendants served properly. (*See* Docs. 82-89.)

The Court now endeavors to set forth the claims as they survived the judgment on the pleadings and now stand facing the three motions to dismiss. Count one alleging Eighth Amendment violations remain against only defendants R. Scharffenberg, I. Sedighi, L. Meritt, and L. Sheppard. Count two alleging a First Amendment violation now remain against A. Canlas, A. Denbela, M. Glynn, K. Seeley, R. Walker, P. Newton, P. Velardi, R. Scharffenberg, I. Sedighi, L. Meritt, and L. Sheppard. Count three alleging a Fourteenth Amendment violation remains against defendants R. Sharffenberg, I. Sedighi, L. Meritt, and L. Sheppard. Count four alleging conspiracy remains against defendants A. Canlas, A. Denbela, M. Glynn, K. Seeley, R. Walker, P. Newton, P. Velardi, R. Scharffenberg, I. Sedighi, L. Meritt, and L. Sheppard. Count five alleging intentional infliction of emotion distress remains against defendants R. Sharffenberg, I. Sedighi, L. Meritt, and L. Sheppard. Defendants Jodie Rivera, R. Cobb, R. Olson, and J.

---

FAC, the Court need not consolidate these defendants or otherwise determine if they are in fact the same person. (*See* Docs. 1, 43, 77.)

Ramirez have had all of Plaintiff's claims against them dismissed pursuant to the Court's Order on these defendants' motion for judgment on the pleadings. (Doc. 62.)

## IV. DISCUSSION

Now before the Court are three respective motions to dismiss filed by three groups of defendants. First, RJD Defendant P. Velardi filed a motion to dismiss based on Plaintiff's failure to state a claim against her for which relief could be granted. (Doc. 92.) Second, RJD Defendants Walker and Sedighi filed a motion to dismiss based on Plaintiff's failure to state a claim against them for which relief could be granted. (Doc. 93.) Third and finally, SATF Defendants filed a motion to dismiss based on improper venue and misjoinder of parties and claims, or alternatively for failure to state a claim against these defendants for which relief can be granted. (Doc. 94.) Plaintiff filed a response to these motions on April 16, 2018. (Doc. 107.) Only defendant P. Velardi filed a reply to Plaintiff's response to her motion to dismiss. (Doc. 108.)

### A. Motion to Dismiss or Transfer for Improper or Inconvenient Venue

In lieu of a first appearance, the SATF Defendants filed this motion to dismiss based in part on improper venue. (Doc. 94.) This case was filed with the Court in the Southern District of California. (*See* Doc. 1.) The SATF Defendants argue this is not the proper venue, but instead, the Eastern District of California is the proper district. (Doc. 94-1 at 13.) The SATF Defendants base this argument on their respective residences in Kings County, California, which is located in the Eastern District of California.[7] (*Id.* at 14.) The SATF Defendants also note the Eastern District is proper because "the operative facts alleged against these [d]efendants took place [in the Eastern District]." (*Id.* at 15.) Given the current, allegedly improper venue, the SATF Defendants move to

---

[7] The SATF Defendants requested the Court take judicial notice of Kings County being in the Eastern District of California. (Doc. 94-1 at 14.) The Court takes such notice.

have the case either dismissed, or in the alternative, transferred to the Eastern District. (*Id.* at 16.)

Plaintiff contends the case is filed in a proper venue because each defendant named, including both SATF Defendants and RJD Defendants, "acted in a con[c]erted fashion and manner" when treating Plaintiff's carpal tunnel pain. (Doc. 107 at 24.) By acting in such a concerted manner, Plaintiff seems to argue that while the SATF Defendants and RJD Defendants may have committed these "acts or omissions" in different locations and at different times, the two groups of defendants ultimately committed the same "acts or omissions" in prescribing Plaintiff pain medication, deviating from the Pain Management Guidelines without cause, and overall failing to provide adequate medical treatment to Plaintiff. (*Id.*)

For every civil matter filed in federal court, there are two available venues: (1) a judicial district where any defendant resides, if all defendants are residents of the same state; or (2) a judicial district where a substantial part of the events giving rise to the claim occurred. 28 U.S.C. § 1391(b)(1)-(2). If neither of these are deemed applicable, venue is proper where any defendant is subject to personal jurisdiction. 28 U.S.C. § 1391(b)(3). If a case is filed in an improper venue, the presiding court may either dismiss the case entirely or transfer the case to a proper venue. 28 U.S.C. § 1406(a). When more than one venue is proper, however, a plaintiff's choice of forum should rarely be disturbed. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981).

Even when a venue is proper, a court may still choose to dismiss a civil suit by *forum non conveniens* if the movant has shown the chosen forum is unnecessarily burdensome. *Id.* at 256-57 (stating that the central purpose to a *forum non conveniens* inquiry is convenience).

### 1. *Proper Venue*

Initially, the Court must determine what venues are proper in this case. While the SATF Defendants argue the Eastern District is proper, Plaintiff argues the Southern District is proper. Here, the SATF Defendants all reside in the Eastern District of

3:14-cv-01525-JLS-PCL

California. The RJD Defendants, on the other hand, likely all live in the Southern District of California, given their place of employment is in San Diego. The defendants, therefore, all reside in the same state: California. Accordingly, 28 U.S.C. section 1931(b)(1) can apply. Under this section, when all defendants reside in the same state, as is true here, any district where any defendant resides is appropriate. Thus, both the Southern and Eastern Districts are proper.

To the extent SATF Defendants argue only the Eastern District is proper, the SATF Defendants are incorrect. The SATF Defendants advance an argument that the Eastern District is proper *for only the SATF Defendants*. (Doc. 94-1 at 15.) This argument disregards the other number of defendants Plaintiff has named, primarily the RJD Defendants. Instead, the SATF Defendants contend because they reside in the Eastern District, and the claims against them arose in the Eastern District, the Eastern District is the only proper venue. This conclusion is flawed in that the SATF Defendants have only considered the claims as they pertain to the SATF Defendants. Conversely, Plaintiff named all defendants in all of his claims, meaning the RJD Defendants are defending themselves against Plaintiff's claims alongside the SATF Defendants. Because of this shared position, the SATF Defendants cannot disregard the RJD Defendants' residences in the venue analysis.

### 2. *Convenient Venue*

The SATF Defendants further argued that even if the Southern District was a proper venue, the Court should still transfer the case to the Eastern District because the Eastern District would be more convenient. (*Id.* at 15-16.) Specifically, the SATF Defendants argue because they reside in the Eastern District, the operative facts took place in the Eastern District, the Plaintiff is currently incarcerated at Mule Creek State Prison which is in the Eastern District, and "most importantly, relevant witnesses fellow inmates, other prison officials, and possibly tangible evidence" are all located in the Eastern District, the Eastern District is the more convenient venue. (*Id.*) Given these

significant ties to the Eastern District, the SATF Defendants argue transfer is warranted. Plaintiff does not address this argument.

The SATF Defendants cite *Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000), to support their argument for transfer. Therein, the Ninth Circuit listed factors which should be weighed in a court's consideration of transferring a case initially brought in a proper venue, to a second proper venue. *Id.* at 498-99. The SATF Defendants list the relevant factors as: (1) the plaintiff's choice of forum, (2) the differences in litigations costs in the two forums, (3) the ability to compel unwilling non-party witnesses to attend court hearings, and (4) the ease of access to sources of proof. *Id.* The SATF Defendants argue all four of these factors weigh in favor of transferring the case to the Eastern District. The Defendants' analysis is misconstrued.

The SATF Defendants seem to assume that Plaintiff's choice of forum is the Eastern District because he is incarcerated at Mule Creek Prison which is located in the Eastern District. (Doc. 94-1 at 16.) But the Court must give defererence to Plaintiff's choice of forum. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981); *Ellis v. Costco Wholesale Corp.*, 372 F. Supp. 2d 530, 545 (N.D. Cal. 2005) (stating that although a venue may be more convenient for a defendant, it must be weighed against the plaintiff's choice of forum). Here, Plaintiff chose to file his claim in the Southern District, despite being incarcerated in the Eastern District at the time Plaintiff filed his initial complaint. (*See* Doc. 1 at 1, where Plaintiff lists his then current address in Corcoran, California.)

Moreover, although litigation costs, compulsory process, and access to proof may be more convenient in the Eastern District for the claims against the SATF Defendants, this does not take into account the other defendants, specifically the RJD Defendants. A transfer to the Eastern District would merely shift the burden to those defendants residing in the Southern District. "A transfer of venue should not merely shift the burden of inconvenience from one party to another." *Schwartz v. Marriot Hotel Servs.*, 186 F. Supp. 2d 245, 250 (E.D.N.Y. 2002). Given this, the SATF Defendants have failed to show that the convenience in the Eastern District outweighs Plaintiff's choice of forum.

Accordingly, the SATF Defendants' motion to dismiss, or alternatively to transfer, for improper venue is **<u>DENIED</u>**.

## B. <u>Improper Joinder</u>

Next, the SATF Defendants argue Plaintiff's complaint should be dismissed as to them because there was a misjoinder of the claims against the SATF Defendants with those against the RJD Defendants. (Doc. 94-1 at 16-18.) This argument rests upon the SATF Defendants' belief that "there is no causal connection between the claims against the [RJD] Defendants and those against" the SATF Defendants. (*Id.* at 18.) The SATF Defendants point out the only similarity between the claims against the two sets of defendants is that "they relate to Plaintiff's medical treatment for pain management." (*Id.*) Plaintiff rebuts this argument contending the claims are the result of all defendants having "acted in a con[c]erted fashion and manner" in treating Plaintiff's medical condition. (Doc. 107 at 24.) Because each set of defendants allegedly took the same action to address the same condition, Plaintiff contends the claims are a series of occurrences, therefore the claims may be properly joined. (*Id.*)

Federal Rule of Civil Procedure Rule 20(a) governs permissive joinder, and identifies two prerequisites for the joinder of defendants: (1) a right to relief must be asserted against the defendants jointly, severally or with respect to or arising out of the same transaction, occurrence or series of transactions or occurrences; and (2) the claims must involve some question of law or fact common to all defendants. Fed. R. Civ. P. 20(a)(2); *see also League to Save Lake Tahoe v. Tahoe Reg. Plan Agency*, 558 F.2d 914, 917 (9th Cir. 1977). Joinder is to be construed liberally "in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits." *League to Save Lake Tahoe*, 558 F.2d at 917.

Nonetheless, district courts retain broad discretion in applying Rule 20. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296-97 (9th Cir. 2000) (whether severance is appropriate under Rule 20 lies within the sound discretion of the trial court); *Desert Empire Bank v. Insurance Co. of North America*, 623 F.2d 1371, 1375 (9th Cir. 1980)

14

(even if the requirements of Rule 20 are satisfied, courts must examine other relevant factors to determine whether permissive joinder will comport with principles of fundamental fairness).

As identical claims were made by Plaintiff against both the SATF Defendants and the RJD Defendants, the second prong of the Rule 20(a) joinder is clearly met. In addressing these identical claims, there will clearly be questions of law which are common to all defendants, regardless of where the defendant treated Plaintiff. Thus, only the first prong is at issue here.

"The Ninth Circuit has stated that the first prong-addressing whether [plaintiff's] claims arise from the 'same transaction, occurrence, or series of transactions or occurrences' refers to the 'similarity in the factual background' of the claims." *Padron v. Onewest Bank*, 2014 U.S. Dist. LEXIS 47947 at *2 (C.D. Cal. Apr. 7, 2014) (quoting *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir.1997)). "Although there might be different occurrences, where the claims involve enough related operative facts, joinder in a single case may be appropriate." *Nguyen v. CTS Elecs. Mfg. Sols. Inc.*, 301 F.R.D. 337, 341 (N.D. Cal. 2014) (citing *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974).

There is no bright-line definition of "transaction," "occurrence," or "series." Instead, courts assess the facts of each case individually to determine whether joinder is sensible in light of the underlying policies of permissive party joinder. *See Coughlin*, 130 F.3d at 1350. Although there might be different occurrences, where the claims involve enough related operative facts, joinder in a single case may be appropriate. *See Mosley v. General Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974) ("'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship").

The language of Rule 20 itself indicates that claims need not be coextensive in order for joinder to be proper. Fed. R. Civ. P. 20(a)(3). Plaintiff argues his claims arose out of a series of related transactions or occurrences because both the SATF and RJD

Defendants were acting, or failing to act, in response to Plaintiff's complaints of carpal tunnel pain. (Doc. 107 at 24.) Plaintiff alleges each group of defendants took the same action in prescribing pain medications, disregarding the Pain Management Guidelines, and in providing inadequate medical care. (*Id.*) "All 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence." *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1323 (11th Cir. 2000), citing *Mosley*, 497 F.2d at 1333. The Ninth Circuit has recognized a similarly expansive definition of transaction, even if not directly in the context of a Rule 20 analysis. *See*, *e.g.*, *Bautista v. Los Angeles County*, 216 F.3d 837, 842 (9th Cir. 2000) (defining "transaction or occurrence" as meaning "similarity in the factual background of a claim"); *see also Union Paving Co. v. Downer Corp.*, 276 F.2d 468, 470 (9th Cir. 1960) (claims that have definite "logical relationship" arise out of same transaction or occurrence).

The SATF Defendants argue because there is no "causal connection" between the claims against them and the RJD Defendants, the claims against them should be considered entirely distinct. The Court disagrees. Instead, the SATF Defendants and the RJD Defendants undertook the medical care of Plaintiff while Plaintiff was incarcerated in the respective facilities. In doing so, each set of defendants prescribed Plaintiff pain relieving medication which caused severe side effects. Additionally, each set of defendants allegedly disregarded the Pain Management Guidelines in treating Plaintiff. Finally, each set of defendants ultimately rejected Plaintiff's request to be seen by a licensed orthopedist or other specialist for his hand and wrist pain. While not every claim is applicable to every defendant, as will be discussed more thoroughly herein, there are sufficient allegations made against both sets of defendants such that joinder is proper.

Furthermore, it would be an inordinate waste of judicial time and resources to litigate these claims separately against the two sets of defendants. Any minimal potential prejudice or inconvenience that could result to any defendant from joinder is far outweighed by the needless cost and effort to both the Court and Plaintiff that separate

trials would entail. Accordingly, the SATF Defendants' motion to dismiss based on improper joinder is **__DENIED__**.

### C. 12(b)(6) Motions to Dismiss Substantive Claims

Both the RJD and SATF Defendants have moved to dismiss all of Plaintiff's claims based on Plaintiff's alleged failure to state claims against the defendants upon which relief can be granted. (Docs. 92, 93, 94.)

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court must accept all allegations of material fact pleaded in the complaint as true. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The Court must also construe the allegations in favor of the nonmoving party and draw all reasonable inferences from them in favor of the nonmoving party. *Id.* To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (alteration in original)). A court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678. "[T]o be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the

17

opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Despite the deference the court must pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

As a general rule, a court freely grants leave to amend a complaint which has been dismissed. Fed. R. Civ. P. 15(a); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co.*, 806 F.2d at 1401 (citing *Bonanno v. Thomas*, 309 F.2d 320, 322 (9th Cir. 1962)). When a court dismisses a *pro se* litigant's complaint, the court must provide the plaintiff with a statement of the deficiencies in the complaint. *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623–624 (9th Cir. 1988).

### 1. *Eighth Amendment Claim for Deliberate Indifference*

While both the SATF Defendants and the RJD Defendants have moved to dismiss Plaintiff's Eighth Amendment claim, the only defendants this claim has survived against are the SATF Defendants. (*See* Doc. 62 at 14, where the Court dismissed this claim against the RJD Defendants, among other nonmoving defendants.) The Court will accordingly only address this claim as it pertains to the SATF Defendants. Plaintiff has claimed his Eighth Amendment protection against cruel and unusual punishment has been violated by the SATF Defendants because the SATF Defendants undermedicated Plaintiff, provided only "weak" pain relieving medications, and opted to treat Plaintiff's pain with "powerful" anti-psychotic and anti-depressant medications. (Doc. 43 at 26-27.) The SATF Defendants argue Plaintiff has failed to properly state this claim because Plaintiff alleges only a difference of opinion regarding the medical treatment he received. (Doc. 94-1 at 20.) As such, the SATF Defendants contend Plaintiff has not set forth

allegations showing the SATF Defendants were "deliberately indifferent to Plaintiff's pain." (*Id.*)

In a prior order, the Court dismissed this claim against the RJD Defendants and other nonmoving defendants. (*See generally* Doc. 63.) Plaintiff had made almost identical claims against those defendants. (Doc. 43 at 24-26.) Plaintiff alleged the now dismissed defendants violated his Eighth Amendment rights by undermedicating Plaintiff, prescribing him "weak" pain relieving medications, prescribing anti-psychotic and anti-depressant medications, and cancelling his treatments abruptly. (*Id.*) The Court found these allegations against the RJD Defendants, and other nonmoving defendants, were not sufficient to survive a judgment on the pleadings. (Doc. 63.) Specifically, the Court found those defendants' actions were not deliberately indifferent; although they may have risen to the level of negligence. (*Id.* at 13-14.)

For an Eighth Amendment violation, a prisoner must show that the defendants were deliberately indifferent to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to an inmate's health. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. *Id.* This subjective approach focuses upon the mental attitude of the defendant. *Id.* at 839.

Plaintiff alleges his carpal tunnel is a serious medical condition. (Doc. 43 at 21.) Regardless of whether Plaintiff's carpal tunnel, and the corresponding pain, are serious medical conditions or not, Plaintiff's allegations fail to show the SATF Defendants' deliberate indifference. A defendant acts with deliberate indifference when he knowingly fails to respond to a serious medical need and, thereby inflicts harm on the plaintiff. *See Farmer*, 511 U.S. at 837-42; *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (defendant is deliberately indifferent when he purposefully fails to respond to a prisoner's pain). Deliberate indifference may appear when a defendant denies, delays, or otherwise interferes with medical treatment. *See Hutchinson v. United States*, 838 F.2d 390, 394

(9th Cir. 1988). Nevertheless, "[d]eliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105-06).

Plaintiff contends the SATF Defendants were deliberately indifferent when they undermedicated Plaintiff with "weak" pain relieving medications. The medications did not alleviate Plaintiff's severe pain, but rather enhanced the pain by causing serious side effects. Additionally, Plaintiff contends the SATF Defendants were deliberately indifferent when they prescribed Plaintiff "powerful" anti-psychotic and anti-depressant medications despite Plaintiff's documented mental illness.

To the extent Plaintiff alleges the SATF Defendants were deliberately indifferent when they "underprescribed" Plaintiff a combination of "weak" pain relieving medications, Plaintiff cannot show anything beyond a difference in medical opinion. *See Womack v. Bakewell*, 2013 U.S. Dist. LEXIS 86374 at *9 (E.D. Cal. June 19, 2013) ("In this regard, plaintiff's disagreement with defendants about the type and strength of his pain medication does not reflect a conscious disregard of plaintiff's serious medical needs"). While Plaintiff continually argues he needs more powerful pain relieving medications, Plaintiff omits the SATF Defendants' attempts to prescribe Plaintiff such medications.

Initially, the SATF Defendants prescribed Plaintiff acetaminophen, ibuprofen, and naproxen to alleviate his carpel tunnel pain. (Doc. 43 at 21.) However, after Plaintiff complained his pain was still persisting, the SATF Defendants prescribed ranitidine, a stronger pain relieving medication. (*Id.*) After this, Plaintiff again complained of his carpal tunnel pain, and again the SATF Defendants prescribed stronger medication. (*Id.*) This last batch of medications, comprised of ibuprofen, acetaminophen, ranitidine, rortriptyline, oscarbazepine, and Effexor, included antidepressant medications. (*Id.* at 22.) After thirteen months on this combination of medications, Plaintiff attempted suicide. (*Id.* at 23-24.)

Plaintiff contends these prescriptions were the result of the SATF Defendants' deliberate indifference towards both Plaintiff's pain and Plaintiff's preexisting mental conditions. (*Id.* at 23-26.) Conversely, though, these allegations show the SATF Defendants worked toward alleviating Plaintiff's pain by conservatively prescribing increasingly more powerful pain medications. The SATF Defendants were not deliberately indifferent toward Plaintiff's pain; but instead responded to Plaintiff's medical needs in a way they saw fit. *See Jackson v. Multnomah County*, 2013 U.S. Dist. LEXIS 14787 at *4 (D. Or. February 4, 2013) (providing an over the counter pain reliving medication instead of a narcotic pain medication is not a basis for an Eighth Amendment claim). As the Court has noted before, Plaintiff's allegations show the SATF Defendants modified Plaintiff's treatment regimen "at least five different times," thereby showing a diligent effort to perfect a combination of pain relieving medications for Plaintiff. (*See* Doc. 62 at 9.) Without more, Plaintiff simply cannot show there is more than a disagreement over treatment methods, which is insufficient for an Eighth Amendment claim. *See Parlin v. Sodhi*, 2012 U.S. Dist. LEXIS 15987 (C.D. Cal. Aug. 8, 2012) (plaintiff's Eighth Amendment claim based on a denial of plaintiff's preferred pain medication, which was stronger than that actually prescribed, represented "precisely the type of difference in medical opinion between a lay prisoner and medical personnel that is insufficient ot establish a constitutional violation"); *Salvatierra v. Connolly*, 2010 U.S. Dist. LEXIS 137731 at *20 (S.D. N.Y. Sept. 1, 2010); *Fields v. Roberts*, 2010 U.S. Dist. LEXIS 44628 at *4 (E.D. Cal. April 7, 2010).

Next, Plaintiff asserts that Defendants were deliberately indifferent when prescribing powerful anti-depressants that subjected him to adverse side effects. (Doc. 43, at 24-26.) Plaintiff argues that Defendants were bound to follow the CPHCS Pain Management Guidelines, but the SATF Defendants disregarded these guidelines in lieu of their own, allegedly faulty, judgment. (Doc. 43 at 8.) The SATF Defendants contend, however, that Plaintiff's allegations merely show the SATF Defendants attempted to treat Plaintiff's pain. (Doc. 94-1 at 22.)

The Pain Management Guidelines Plaintiff contends the SATF Defendants did not comply with set forth a standardized framework to address pain problems in inmates throughout the state of California. *See Witkin v. Lotersztain*, 2018 U.S. Dist. LEXIS 30729 at *28 (E.D. Cal. Feb. 23, 2018). Pain management medications are generally classified as non-opioid analgesics, neuropathic pain agents, and opioids. *Id.* Non-opioid analgesics include non-steroidal anti-inflammatory drugs, such as Motrin. *Id.* Neuropathic pain agents target nerve-based pain and include certain anticonvulsant and antidepressant drugs. *Id.* Opioids are the chronic pain treatment of last resort. *Id.* According to the Pain Management Guidelines, clinicians may prescribe anti-depressants if the anti-depressants are solely for the purpose of pain management and if the screen for depression "contained in the Intake tool" is negative. CAL. CORR. HEALTH CARE SERVS., CARE GUIDES/GUIDELINES (2009). The Pain Management Guidelines create a "standard framework," which are "not fixed protocols that must be followed." *Id.* In other words, the guidelines reserve the discretion to determine a proper course of treatment to CPCHS clinicians. *Id.*

Plaintiff alleges in his FAC that he had been previously diagnosed by mental health professionals with various mental conditions, including depression. (Doc. 43 at 9.) As a result of this, Plaintiff contends he was already on a regimine of anti-psychotic medications. (*Id.*) Although Plaintiff tested positive for depression, he fails to show why "powerful anti-depressants" were unacceptable under the circumstances. A CPHCS clinician who veers from the Pain Management Guidelines does not *per se* consciously disregard an excessive risk, but rather, the clinician shows a difference in medical opinion. For example, Plaintiff alleges that the SATF Defendants knew that nortriptyline, oscarbazepine, Effexor, and Prozac should not be prescribed jointly, (Doc. 43 at 23), but Plaintiff never provides any facts to substantiate this allegation nor the source of the SATF Defendants' presumed knowledge. Even if Plaintiff was correct, that allegation only shows knowledge of the risk, not a conscious disregard of the risk. Without proof of

this second, subjective, prong of his Eighth Amendment claim, Plaintiff has not properly pled such a claim.

Furthermore, as the Court previously found regarding this claim as it pertained to the RJD Defendants, the SATF Defendants' prescribing pain relief medication in combination with powerful anti-psychotic and anti-depressant medications does not rise to the high legal standard of deliberate indifference. (*See* Doc. 63.) Even if the SATF Defendants' actions did rise to malpractice or negligence, "mere malpractice, or even gross negligence does not" constitute a claim under the Eighth Amendment. *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) (finding plaintiff's claim did not demonstrate deliberate indifference because the plaintiff "was given medical care at the prison that addressed his needs"). Regarding the SATF Defendants, Plaintiff's allegations demonstrate the SATF Defendants evaluated Plaintiff's condition, consulted (or should have consulted) the Pain Management Guidelines, and recommended a treatment regimen to alleviate Plaintiff's pain. (*See* Doc. 43 at 8, 24-26.) All of these actions show the SATF Defendants provided medical care to Plaintiff and did not knowingly fail to respond to a serious medical need. *See Farmer*, 511 U.S. at 837-42; *Jett*, 439 F.3d at 1096.

Plaintiff alleges the SATF Defendants were aware, or should have been aware, that prescribing over-the-counter pain relief medication with anti-psychotic and anti-depressant medication could cause severe side effects. However, such allegations do not lead the Court to find the SATF Defendants' numerous attempts to treat Plaintiff were medically unacceptable and chosen in conscious disregard of an excessive risk to Plaintiff's health. Instead, these allegations show nothing more than a difference of opinion. Accordingly, the SATF Defendants' motion to dismiss Plaintiff's Eighth Amendment claim pertaining to them should be **<u>GRANTED</u>**.

### *2. First Amendment Retaliation Claim*

Both the SATF Defendants and the RJD Defendants have moved to dismiss Plaintiff's claim that his First Amendment rights were violated by both groups of defendants' alleged retaliatory actions. (Docs. 94-1 at 23.) Plaintiff named RJD

Defendants Walker and Velardi, among other nonmoving or already dismissed defendants in this claim. (Doc. 43 at 28.) While both the RJD Defendants and the SATF Defendants have moved to dismiss this claim, the Court will only consider the RJD Defendants Walker and Velardi's moving papers. Because the SATF Defendants were not named in this claim, their motion is denied as moot to this extent. RJD Defendant Sedighi argues this claim should be dismissed against him because "there simply ar[e n]ot any allegations that [he] retaliated against Plaintiff. . . ." (Doc. 93-1 at 21.) This is a correct assertion. While Plaintiff named RJD Defendant Sedighi in the "Cause of Action" section of his FAC, Plaintiff made no allegations whatsoever against RJD Defendant Sedighi in the statement of facts. (*Compare* Doc. 43 at 28 *with Id.* at 14-16.) Accordingly, this claim is dismissed against RJD Defendant Sedighi. See *Parker v. Kitzhaber*, 1989 U.S. Dist. LEXIS 13756 at *12 (Ore. Oct. 25, 1989).

Plaintiff alleges that as a result of his filing a petition for writ of habeas corpus to address his complaints about the medical treatment he was receiving, RJD Defendants Walker and Velardi, among other nonmoving defendants, retaliated by cancelling all of Plaintiff's medical treatment. (*Id.* at 14-15.) Plaintiff contends this retaliatory cancellation of his medical treatment was the direct result of having exercised his First Amendment right and filing the petition with the court. (*Id.*) After this cancellation occurred, Plaintiff filed a prisoner grievance form stating he was being subjected to "severe pain and suffering" "on a daily basis" as Plaintiff's medical treatment and prescriptions were not reinstated. (*Id.* at 15.) Plaintiff also continued to request treatment from a specialized orthopedist. (*Id.* at 16.) These requests were "routinely denied." (*Id.*) Plaintiff alleges that for the next two years – from May 10, 2012, when his treatment was cancelled, to May 28, 2014, when he was transferred – RJD Defendants Sedighi, Walker, Velardi, and other nonmoving defendants who were also assigned as Plaintiff's PCPs, did not prescribe Plaintiff any medication to treat his symptoms. (*Id.*)

RJD Defendant Walker did not present any arguments for dismissal of this claim aginst him. (*See* Doc. 93-1 at 21.) RJD Defendant Velardi does put forth a two part

argument regarding this claim as it pertains to her. (Doc. 92 at 11-12.) First, RJD Defendant Velardi argues Plaintiff did not set forth any allegations showing his ability to communicate with the general public was restricted by the alleged retaliation. (*Id.* at 11.) Second, RJD Defendant Velardi argues Plaintiff failed to properly plead a prima facie case for a First Amendment claim against her. (*Id.*) Particularly, RJD Defendant Velardi argues Plaintiff failed to show he engaged in protected conduct, that she knew of such engagement, or that the alleged actions chilled the exercise of his First Amendment rights. (*Id.* at 12.)

In its previous ruling on the motion for judgment on the pleadings, this Court found the then-moving defendants' argument unpersuasive regarding this claim. (Doc. 63.) There, the moving defendants argued Plaintiff could not show his First Amendment right had been violated by this alleged retaliatory action because Plaintiff could not show an element of the prima facie case: that his exercise of his First Amendment rights had been chilled. (*Id.* at 16.) Plaintiff set forth facts showing the moving defendants had cancelled Plaintiff's medical treatment merely three days after he filed his petition for writ of habeas corpus. (Doc. 43 at 16.) In doing so, the Court found "the proximity to Plaintiff's filing plausibly suggests [the moving d]efendants may have had an ulterior motive; . . . ." (*Id.*) Thus, the Court denied the motion for judgment on the pleadings regarding Walker and Velardi, among other moving defendants.

Of fundamental import to prisoners are their First Amendment "right[s] to file prison grievances," *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003), and to "pursue civil rights litigation in the courts." *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995). Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices. And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield. *See, e.g., Pratt v. Rowland*, 65 F.3d 802, 806 n.4 (9th Cir. 1995) ("The prohibition against retaliatory punishment is 'clearly established

law' in the Ninth Circuit, for qualified immunity purposes. That retaliatory actions by prison officials are cognizable under § 1983 has also been widely accepted in other circuits.") (citing *Schroeder*, 55 F.3d at 461; *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994); *Frazier v. Dubois*, 922 F.2d 560, 561-62 (10th Cir. 1990); *Madewell v. Roberts*, 909 F.2d 1203 (8th Cir. 1990); *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987); *Bridges v. Russell*, 757 F.2d 1155 (11th Cir. 1985); *Buise v. Hudkins*, 584 F.2d 223 (7th Cir. 1978)).

Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). *See also*, *e.g.*, *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000); *Barnett*, 31 F.3d at 815-16. RJD Defendant Velardi argues Plaintiff's allegations do not properly satisfy the first, second, third, and fourth elements listed above. (Doc. 92 at 11-12.)

Plaintiff's protected conduct in this case was his filing the petition for writ of habeas corpus, after his numerous prison grievances and vocal complaints went unanswered. (Doc. 43 at 14.) The filing of prison grievances as well as pursuing civil rights litigation are both protected actions under the First Amendment. *Bruce*, 351 F.3d at 1288; *Schroeder*, 55 F.3d at 461. Three days after Plaintiff exercised his rights in this way, RJD Defendant Velardi, among other nonmoving defendants, cancelled Plaintiff's prescriptions. (Doc. 43 at 15.) Plaintiff alleges this cancellation was a retaliation against Plaintiff for Plaintiff's continual filing of prison grievances as well as his filing the petition – all exercises of his First Amendment right to free speech. (*Id.*)

As an initial matter, RJD Defendant Velardi argues Plaintiff has not shown she actually took any action against Plaintiff. (Doc. 92 at 12; Doc. 108 at 4-5.) Conversely, in his FAC, Plaintiff explicitly states: "In retaliation, on May 10, 2012, Garcia['s] entire

prescri[ption] treatment [consisting of] medications for pain relie[f] was cancel[led] by defendants K. Seeley, A. Canlas, M. Martinez, R. Walker, P. Newton, *P. Velardi*, A. De[n]bela, M. Glynn, [and] Jhon/Jane [*sic*] Does, . . . ." (Doc. 43 at 14, emphasis added.) Plaintiff clearly alleged RJD Defendant Velardi was a member of the group of medical professionals which cancelled Plaintiff's medications. Thus, Plaintiff has properly pled allegations against RJD Defendant Velardi to this extent.

Next, RJD Defendant Velardi argues Plaintiff has not shown facts that both Plaintiff had engaged in protected conduct and the cancellation of Plaintiff's prescriptions was the direct result of such engagement. (Doc. 92 at 11-12.) Little is required to adequately plead a causal link between the alleged retaliation and protected conduct. *Emeldi v. Univ. of Oregon*, 673 F.3d 1218, 1226 (9th Cir. 2012). Plaintiff asserts the timing of the prescription cancellation shows Velardi's intent to retaliate. "[T]iming can properly be considered as circumstantial evidence of intent." *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995). As the Court has previously found, given the timing of Plaintiff's filing the petition for writ of habeas corpus and just a short time later having his prescriptions cancelled, there is adequate information provided for the Court to find it plausible that the cancellation was the direct result of Plaintiff's actions. (*See* Doc. 63 at 16.) Thus, Plaintiff has also properly pled the causal connection between the exercise of protected conduct and the retaliatory actions.

RJD Defendant Velardi lastly contends even if the cancellation of Plaintiff's prescriptions was retaliatory, there was no chilling effect on Plaintiff's exercise of his First Amendment rights because Plaintiff immediately continued to file prison grievances. (Doc. 92 at 12.)  But, "because it would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity, . . . a proper inquiry asks 'whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.' " *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (quoting *Crawford-El v. Britton*, 93 F.3d 813, 826 (D.C. Cir. 1996), *vacated on*

*other grounds*, 520 U.S. 1273 (1997)). A plaintiff may demonstrate "intent to inhibit speech" through direct or circumstantial evidence and is not required to "demonstrate that his speech was actually inhibited or suppressed." *Id.*; *see also Rhodes*, 408 F.3d at 562 (finding a plaintiff's "allegations that his First Amendment rights were chilled, though not necessarily silenced, is enough to perfect his claim").

After Plaintiff's prescriptions were cancelled, Plaintiff complained of this to RJD medical professionals and requested he either be seen by a new PCP or be referred to an orthopedic specialist for examination. (Doc. 43 at 15.) The RJD medical professionals reassigned largely the same group of PCPs who had previously cancelled Plaintiff's medication. (*Id.*) These PCPs again denied Plaintiff's requests. Regardless of Plaintiff's continuing to file grievances, this cancellation may have been intended to chill Plaintiff's exercise of his First Amendment. In fact, this intent is shown here through circumstantial evidence, primarily the timing of the cancellation following Plaintiff's filing. *See Mendocino Envtl Ctr.*, 192 F.3d at 1300. Based on this, the Court finds Plaintiff has adequately pled this element of a First Amendment claim.

Accordingly, this Court should **GRANT** the motion to dismiss this claim against the SATF Defendants, as well as RJD Defendant Sedighi; and **DENY** the same against RJD Defendants Velardi and Walker.

### 3. *Fourteenth Amendment Equal Protection Claim*

Both the SATF Defendants and the RJD Defendants move to dismiss this claim against them in their respective motions. (Docs. 92, 93, 94.) The SATF Defendants move to dismiss Plaintiff's equal protection claim based on Plaintiff's failure to state a claim against them upon which relief could be granted. (Doc. 94-1 at 24.) RJD Defendant Velardi also moves to dismiss this claim against her (Doc. 92 at 15); however, the claim was already dismissed against her in a previous order (Doc. 63 at 18). Similarly, RJD Defendants Sedighi and Walker move to dismiss this claim against them (Doc. 93-1 at 22); however, the claim was already dismissed against them in a previous order (Doc. 63

at 18). The Court therefore only addresses the SATF Defendant's arguments and denies the RJD Defendants' motion as moot to this extent.

Plaintiff claims his Fourteenth Amendment right to equal protection was violated by the SATF Defendants, among others, who took actions or failed to take actions which "fail[ed] to reasonably protect [Plaintiff]'s vested rights. . . ." (Doc. 43 at 29.) Additionally, the acts or omissions "fail[ed] to reasonably advance legitimate correctional goals or penological interest[s]." (*Id.*) Plaintiff contends this "violat[ed] [Plaintiff]'s vested right to 'equal protection of law'. . . ." (*Id.*) Plaintiff makes no additional allegations to support this claim.

To state a claim under the Equal Protection Clause, the plaintiff must show the defendants acted with an intent to discriminate against him based on his protected class. *Barren v. Harington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Protected classes include race, religion, and national origin. *Damiano v. Florida Parole & Probation Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986). Plaintiff makes no allegations that he is in fact part of a protected class, nor that any action or omission by the SATF Defendants were taken due to his membership in such a class. *See, e.g., Pers. Adm'r of Mass v. Feeney*, 442 U.S. 256, 279 (1979). Without such facts, Plaintiff has failed to properly assert this claim.

Accordingly, the SATF Defendants' motion to dismiss this claim against them is **GRANTED**.

### 4. *Conspiracy to Violate Plaintiff's Civil Rights*

Both the RJD and SATF Defendants move to dismiss Plaintiff's conspiracy claim against them. Plaintiff alleges the RJD and SATF Defendants, among other nonmoving defendants, committed "individual acts or omissions [that] were carr[ied] out . . . jointly/together" in a concerted fashion, which Plaintiff believes show "the existence of an 'agreement'" to violate Plaintiff's civil rights. (Doc. 43 at 30.) Plaintiff argues there was an agreement between the RJD and SATF Defendants, as well as other nonmoving defendants, whereunder Plaintiff's rights to free speech, freedom from retaliation,

freedom from cruel and unusual punishment, to equal protection, and to file grievances and civil suits would all be violated by these defendants' acts or omissions. (*Id.*)

RJD Defendant Velardi first moves to dismiss this claim against her based on Plaintiff's improperly asserting the claim under 28 U.S.C section 1983. (Doc. 92 at 16.) RJD Defendant Velardi contends "a conspiracy claim does not fall within the purview of [28 U.S.C. s]ection 1983," and therefore Plaintiff may not bring the claim in the current suit. (*Id.*) Alternatively, RJD Defendant Velardi argues Plaintiff has not pled sufficient facts to show she participated in such a conspiracy. (*Id.*)

RJD Defendant Sedighi contends Plaintiff's conspiracy claim rests solely upon the RJD Defendants' cancellation of Plaintiff's prescriptions. (Doc. 93-1 at 25.) RJD Defendant Sedighi, however, did not participate in this action, and therefore argues this claim must be dismissed against him. (*Id.*) The Court notes here that RJD Defendant Sedighi is not named in Plaintiff's conspiracy claim as a defendant. (Doc. 43 at 30.) Therefore, RJD Defendant Sedighi's motion to this extent is moot. RJD Defendant Walker does not move to dismiss this claim against him because the Court previously ruled Plaintiff had sufficiently pled this claim against RJD Defendant Walker. (*Id.* at 24 n.5.) Finally, the SATF Defendants move to dismiss this claim against them because "there are no allegations that [the SATF Defendants] engaged in a conspiracy to violate[] Plaintiff's rights." (Doc. 94-1 at 29.) The SATF Defendants are correct in this contention. Plaintiff does not assert this claim against them in his FAC (Doc. 43 at 30); therefore, the Court finds the SATF Defendants' moving to dismiss this claim against them to be moot.

The only moving defendant who remains then is RJD Defendant Velardi. RJD Defendant Velardi was named in this claim by Plaintiff, was not involved in the motion for judgment on the pleadings, and therefore remains subject to this claim.

To establish a conspiracy claim under 28 U.S.C. section 1983, Plaintiff must show an underlying constitutional violation. *Lacey v. Maricopa Cty.*, 693 F.3d 896, 935 (9th Cir. 2012) (citing *Cassettari v. Nev. Cty.*, 824 F.2d 735, 739 (9th Cir. 1987)). Additionally, the plaintiff must allege enough facts to plausibly show a "meeting of the

minds." *United Steel Workers of Am. V. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir. 1989). However, a jury may infer the existence of a conspiracy if the action was unlikely undertaken without an agreement. *Mendocino Entl. Ctr.*, 192 F.3d at 1301 (citing *Kunik v. Racine Cty.*, 946 F.2d 1574, 1580 (7th Cir. 1991)).

Plaintiff points to two instances for his conspiracy claims. First, Plaintiff alleges RJD Defendant Velardi was part of the group of defendants who conspired to cancel his prescription. (Doc. 107 at 20-21.) As discussed above, Plaintiff has pled a plausible retaliation claim against RJD Defendant Velardi. Additionally, Plaintiff has plausibly pled that RJD Defendant Velardi acted in concert with the other named, but nonmoving, defendants. (*See* Doc. 43 at 30. *See also* Doc. 63 at 19.) Specifically, Plaintiff has set forth facts that these defendants, including RJD Defendant Velardi, acted in concert in cancelling Plaintiff's treatment and falsified their reasons for doing so. (Doc. 43 at 14; Doc. 63 at 19.)

Second, Plaintiff claims that RJD Defendant Velardi also conspired to refuse to refer him to an orthopedist. (ECF No. 107 at 20-21.) However, Plaintiff does not provide any facts to show there was a meeting of the minds to this extent. Instead, the pattern of treatment shows that Defendants attempted to treat him. The mere denial of Plaintiff's request to be referred to an orthopaedic specialist is insufficient to state a separate conspiracy claim. (Doc. 63 at 19.) As the court has found previously, "after Plaintiff's initial surgery prison officials <u>consistently</u> denied Plaintiff's requests, even before Plaintiff began filing formal grievances and pursing court-based redress." (*Id.*, emphasis in original.) Given this, Plaintiff has not properly shown a conspiracy claim exists against RJD Defendant Velardi based on the denial of Plaintiff's requests to see an orthopaedic specialist.

The Court should **<u>GRANT</u>** the motion to dismiss this claim against the SATF Defendants, as well as against RJD Defendant Sedighi, and **<u>DENY</u>** the motion as to RJD Defendants Velardi and Walker.

3:14-cv-01525-JLS-PCL

## 5. _Intentional Infliction of Emotional Distress_

Finally, the RJD Defendants and SATF Defendants move to dismiss Plaintiff's claim against them for intentional infliction of emotional distress (IIED). (Doc. 92 at 16; Doc. 93-1 at 25-26; Doc. 94 at 27.) Of the moving defendants, only RJD Defendants Walker and Velardi are actually named in this claim. (Doc. 43 at 31.) Thus, the SATF Defendants and RJD Defendant Sedighi's arguments to dismiss this claim against them are moot. RJD Defendants Walker and Velardi make essentially the same argument for dismissing this claim against them: Plaintiff does not state any acts or omissions by these defendants which would qualify as extreme and outrageous for purposes of an IIED claim. (Doc. 92 at 16; Doc. 93-1 at 25-26.)

This Court must follow California law for Plaintiff's intentional infliction of emotional distress claim. _Hanna v. Plumber_, 380 U.S. 460, 465 (1965). Under California law, Plaintiff must show three elements for an IIED claim: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual or proximate causation. _Tekle v. United States_, 511 F.3d 839, 855 (9th Cir. 2007) (citing _Davidson v. City of Westminster_, 32 Cal. 3d 197, 209 (1982)). Extreme and outrageous conduct is defined as that which is not acceptable in civilized society. _Fletcher v. Western Nat'l Life Ins. Co._, 10 Cal. App. 3d 376, 397 (1970).

Plaintiff claims RJD Defendants Walker and Velardi, among other nonmoving defendants "subjected [Plaintiff] to emotional distress" by allegedly providing subpar medical care, violating their duty to process a "staff complaint," and breaching their fiduciary duties imposed upon them as correctional officers. (Doc. 43 at 31.) The Court finds none of these allegations rise to the level of extreme and outrageous. Instead, Plaintiff has imposed non-existent duties upon RJD Defendants Walker and Velardi and alleged these duties have been breached, causing Plaintiff emotional distress. Additionally, as discussed at length above, the administration of Plaintiff's medical care,

while disagreeable to Plaintiff, was appropriate. Thus, none of these acts or omissions alleged by Plaintiff fall within the standard of "extreme and outrageous." Accordingly, the Court should **<u>GRANT</u>** RJD Defendants Walker and Velardi's respective motions to dismiss on this issue.

## <u>V. CONCLUSION</u>

For purposes of clarity, given the numerous defendants and complex procedural history of this case, the Court endeavors to set out the remaining causes of action, and which defendants remain subject to those claims, pursuant to the recommendations above. Initially, the Court recommends defendants Jodie Rivera, R. Cobb, R. Olson, J. Ramirez, and Velardi[8] be dismissed for the reasons set out above. Additionally, the Court recommends defendants Sleeley and K. Seeley be consolidated as "K. Seeley"; and defendants Newton and P. Newton be consolidated as "P. Newton."

Plaintiff's first claim alleging an Eighth Amendment violation should be **<u>DISMISSED</u>** as to all defendants, as this Court recommends **<u>GRANTING</u>** SATF Defendnats' motion to dismiss this claim against them. (*See also* Doc. 63 at 14, dismissing this claim as to the then-moving defendants.)

Plaintiff's second claim alleging a First Amendment retaliation claim should be **<u>DISMISSED</u>** against the SATF Defendants pursuant to their motion; however, the Court **<u>DENIES</u>** the motion to dismiss the claim against RJD Defendants Walker and Velardi. The claim thus remains against RJD Defendants Walker and Velardi as well as the other nonmoving defendants, Canlas, Denbela, Glynn, Newton, and Seeley. (*See* Doc. 63 at 16, listing the nonmoving defendants.)

Plaintiff's third claim alleging an equal protection violation claim should be **<u>DISMISSED</u>** as to all defendants, as this Court recommends **<u>GRANTING</u>** SATF

---

[8] There were two defendants named as "Velardi" and "P. Velardi." Defendant Velardi should be dismissed for failure to be served. Defendant P. Velardi is the RJD Defendant the Court has been referring to throughout its discussion of this Report and Recommendation.

3:14-cv-01525-JLS-PCL

Defendants' motion to dismiss this claim against them. (*See also* Doc. 63 at 17, dismissing this claim against the then-moving defendants.)

Plaintiff's fourth claim alleging a conspiracy to violate his civil rights should be **DISMISSED** as to the SATF Defendants, pursuant to their motion; however, however, the Court **DENIES** the motion to dismiss the claim against RJD Defendants Walker and Velardi. The claim thus remains against RJD Defendants Walker and Velardi as well as the other nonmoving defendants, Canlas, Denbela, Glynn, Newton, and Seeley. (*See* Doc. 63 at 16, listing the nonmoving defendants.)

Plaintiff's fifth claim alleging IIED should be **DISMISSED** as to all defendants, as this Court recommends **GRANTING** SATF Defendants' motion to dismiss this claim against them. (*See also* Doc. 63 at 20, dismissing this claim against the then-moving defendants.)

In sum, the remaining claims are Plaintiff's First Amendment claim and conspiracy claim. The remaining defendants are: RJD Defendants Walker, Velardi, and nonmoving defendants Canlas, Denbela, Glynn, Newton, and Seeley. All other defendants and claims should be **DISMISSED**.

Lastly, Plaintiff's motion for an order to serve M. Martinez should be **DISMISSED** pursuant to the discussion above.

This Report and Recommendation is submitted to the Honorable Janis L. Sammartino, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c)(1)(c) of the United States District Court for the Southern District of California. For the reasons outlined above, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered **to grant in part and deny in part** the respective motions to dismiss, and **dismiss** the motion to order service of process, as laid out thoroughly above.

Any party may file written objections with the Court and serve a copy on all parties on or before **July 31, 2018**. The document should be captioned "Objections to Report

and Recommendation." Any reply to the Objections shall be served and filed on or before **August 7, 2018**. The parties are advised that failure to file objections within the specific time may waive the right to appeal the district court's order. *Ylst*, 951 F.2d at 1157 (9th Cir. 1991).

IT IS SO ORDERED.

DATE: July 5, 2018

Peter C. Lewis
United States Magistrate Judge