# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN DARIO GARCIA, JR., <br><br> Plaintiff, <br><br> v. <br><br> SLEELEY, et al., <br><br> Defendants. | Case No.: 14-CV-1525 JLS (RBM) <br><br> **ORDER: (1) OVERRULING PLAINTIFF'S OBJECTIONS, (2) ADOPTING REPORT AND RECOMMENDATION, AND (3) GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT** <br><br> (ECF Nos. 160, 168, 173, 176) |

Presently before the Court are the Motions for Summary Judgment filed by Defendants Pamela Velardi (ECF No. 160) and E. A. Canlas, M.D.; Robert Walker, D.O.; A. Denbela; P. Newton, M.D.; M. Glynn; and K. Seeley, D.O. (erroneously sued as "Sleeley") (ECF No. 168) (together, the "Motions"). Also before the Court is Magistrate Judge Ruth Bermudez Montenegro's Report and Recommendation ("R&R," ECF No. 173) advising the Court to grant the Motions, as well as Plaintiff's Objections to the R&R ("Objs.," ECF No. 176) and Defendant Velardi's Reply to Plaintiff's Objections (ECF No. 177). Having considered Magistrate Judge Montenegro's recommendations, the Parties' arguments, the record, and the law, the Court **OVERRULES** Plaintiff's Objections, **ADOPTS** the R&R in its entirety, and **GRANTS** Defendants' Motions.

## BACKGROUND

Magistrate Judge Montenegro's R&R contains a thorough and accurate recitation of the factual and procedural histories underlying the instant Motions. *See* R&R 2–4, 7–15. This Order incorporates by reference the background as set forth therein.

## LEGAL STANDARD

Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1) set forth a district court's duties in connection with a magistrate judge's report and recommendation. The district court must "make a de novo determination of those portion of the report to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 673–76 (1980); *United States v. Remsing*, 874 F.2d 614, 617 (9th Cir. 1989). In the absence of timely objection, however, the Court "need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72 advisory committee's note to 1983 amendment (citing *Campbell v. U.S. Dist. Court*, 501 F.2d 196, 206 (9th Cir. 1974)); *see also United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) ("[T]he district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise.").

## ANALYSIS

At summary judgment, only Plaintiff's second cause of action for retaliation after exercising his First Amendment right to free speech and fourth cause of action for conspiracy to violate his First Amendment rights remain. *See* ECF No. 136 at 17–18. Defendants have moved for summary judgment in their favor as to both these causes of action. *See generally* ECF Nos. 160, 168. Magistrate Judge Montenegro recommends that the Court grant Defendants' Motions. *See* R&R at 34. Having reviewed the R&R, the Court finds that it is well-reasoned and contains no clear error.

Plaintiff, however, raises several objections to Magistrate Judge Montenegro's recommendation. *See generally* Objs. In accordance with 28 U.S.C. § 636(b)(1), the Court

reviews *de novo* those portions of Magistrate Judge Montenegro's R&R to which Plaintiff has objected.

## I. Magistrate Judge Montenegro's Identification of Plaintiff's Causes of Action

Plaintiff first objects that Magistrate Judge Montenegro has "incorrectly identif[ied] Garcia's actual Retaliation and 1983 Conspiracy causes of action made against defendants being advanced in th[is] civil matter." Objs. at 2. Plaintiff elaborates that he "alleges that moving defendants conspired to (and did) retaliate against [him] for filing grievances, complaints, and a habeas petition with the local court, by cancelling and discounting his entire medically prescribed necessary pain management treatment medications and/or by denying his formal request for said treatment to be renew[ed] or be prescribed . . . , given his serious medical needs, via pretext, and while failing to advance a legitimate penological goal." *Id.*

On *de novo* review, the Court determines that Magistrate Judge Montenegro has correctly identified Plaintiff's causes of action. In Plaintiff's operative Amended Complaint, his second cause of action alleges that Defendants acted "in retaliation due to Garcia's constitutionally protected conduct activities such as 'free speech' and 'petitioning the government by way of inmate grievances or filing suit with the courts and seeking redress of his filings without being subjected to retaliatory acts.'" ECF No. 43 ("Am. Compl.") at 28.[1] As for his fourth cause of action, Plaintiff alleges that Defendants' "individual acts or omissions were carr[ied] out by them jointly/together, while acting in concer[t]/fashion and manner from which Garcia can (and does) establish the exist[e]nce of an 'agreement[,]' a form of 'meeting of minds' to violate Garcia's civil rights . . . and vested U.S. Constitutional rights to free speech[ and] freedom from retaliation." *Id.* at 30.

In ruling on Defendants' motions to dismiss, the Court allowed to proceed Plaintiff's second cause of action for First Amendment Retaliation, *see* ECF No. 136 at 12, and fourth

---

[1] To avoid ambiguity, pin citations to Plaintiff's Amended Complaint refer to the CM/ECF page numbers electronically stamped at the top of each page.

cause of action for conspiracy to violate Plaintiff's civil rights to the extent it was predicated on Plaintiff's allegations that Defendants "acted in concert in cancelling Plaintiff's treatment and falsified their reasons for doing so." *See id.* at 13–14.

Magistrate Judge Montenegro's R&R carefully identifies Plaintiff's surviving causes of action based on Plaintiff's characterization in his opposition to Defendants' Motions. *See* R&R at 18 ("Plaintiff claims that Velardi cancelled Plaintiff's Gabapentin prescription in retaliation for Plaintiff filing medical grievances and a state habeas petition.") (citing ECF No. 170 at 16–17); *id.* at 22 ("Plaintiff claims that Newton cancelled Plaintiff's Gabapentin prescription in retaliation for Plaintiff filing medical grievances and a state habeas petition.") (citing ECF No. 170 at 16–17); *id.* at 24 ("Plaintiff claims that Denbela furthered the retaliatory actions taken against him by denying the first level review of appeal RJD HC 12046389.") (citing ECF No. 170 at 20); *id.* at 26 ("Plaintiff claims that Walker, like Denbela, also retaliated against him by denying the first level review of appeal RJD HC 12046389, and by denying the first level review of appeal RJD HC 12046765.") (citing ECF No. 170 at 20); *id.* at 27 ("Plaintiff claims that Seeley furthered the retaliatory actions taken against him by denying the second level review of appeal RJD HC 12046765.") (citing ECF No. 170 at 23); *id.* at 28 ("Plaintiff claims that Glynn furthered the retaliatory actions taken against him by denying the second level review of appeal RJD HC 12046765.") (citing ECF No. 170 at 23); *id.* at 32 ("Plaintiff alleges that on May 10, 2012, Velardi ordered lab work to test Plaintiff's blood for Gabapentin levels and Newton ordered the Plaintiff be tapered off Gabapentin, and both used the results of that lab work to justify their decisions retroactively. . . . He further asserts that each subsequent reviewer or medical examiner was acting in concert to further the retaliatory actions of Velardi and Newton in cancelling his Gabapentin prescription.") (citing ECF No. 170 at 19–23, 24, 46).

On *de novo* review, the Court determines that Magistrate Judge Montenegro correctly identified and characterized Plaintiff's surviving causes of action. The Court therefore **OVERRULES** Plaintiff's first objection.

/ / /

## II. Magistrate Judge Montenegro's Recitation of Plaintiff's Evidence

Plaintiff next objects that Magistrate Judge Montenegro "has incorrectly identif[ied] and/or failed to place in proper form all evidence setting forth the specific facts in [Plaintiff's] Opposition relevant and material to Garcia's actual Retaliation and Conspiracy causes of action made against defendants." Objs. at 2. Per Federal Rule of Civil Procedure 52(a)(3), Magistrate Judge Montenegro was not required to state her findings of fact, much less "place in proper form" Plaintiff's proffered material facts. *See* Objs. at 2. Nonetheless, Magistrate Judge Montenegro devoted a significant amount of effort to detailing the evidence offered by both Defendants and Plaintiff. *See* R&R at 7–15. Plaintiff identifies no errors in Magistrate Judge Montenegro's summary of his proffer,[2] and the Court identifies no material errors on *de novo* review. Accordingly, the Court **OVERRULES** Plaintiff's second objection.

## III. Magistrate Judge Montenegro's Standards of Review

Plaintiff objects that Magistrate Judge Montenegro has "failed to correctly identify and/or place in proper form those specific standards of review set forth by the U.S. Supreme Court and applicable Federal Rules of Civil Procedure which [shall] govern these U.S. District Court Summary Judgment proceedings." Objs. at 2. Plaintiff therefore requests that "this court should faithfully adhere to the standard of review set forth by Garcia Motion in Opposition in resolving moving defendants['] multiple Motions for Summary Judgment." *Id.* at 3.

Magistrate Judge Montenegro sets forth in her R&R a thorough and accurate recitation of the legal standard governing summary judgment. *See* R&R at 4–7. Plaintiff has not identified a particular alleged defect with Magistrate Judge Montenegro's standard. *See generally* Objs. at 2–3. In comparing Plaintiff's proffered standard, *see* ECF No. 170 at 17–18, with Magistrate Judge Montenegro's, *see* R&R at 4–7, the Court identifies no

---

[2] To the extent Plaintiff identifies specific "factual disputes," the Court addresses those separately below. *See infra* Section V.

differences that would compel a change in Magistrate Judge Montenegro's or this Court's conclusions. Accordingly, the Court **OVERRULES** Plaintiff's third objection.

### IV. Magistrate Judge Montenegro's Denial of Plaintiff's Motion Requesting Appointment of Expert Witnesses

Plaintiff challenges Magistrate Judge Montenegro's decision to "DENY Garcia's timely and properly made request for expert designations, so he could be able to properly rebut defendants['] expert evidence at summary judgment, by introducing his own expert declaratory evidence at these proceedings." Objs. at 3.

Plaintiff filed his *Ex Parte* Application Motion Requesting the Appointment of Expert Witnesses on September 13, 2018. *See* ECF No. 129. Magistrate Judge Montenegro denied his motion on October 23, 2018, *see generally* ECF No. 137, ultimately concluding that, "at this point[,] appointing an expert witness in inappropriate," but "recogniz[ing] the possibility that[,] at a later stage in this litigation, such as at trial, issues may arise that require the appointment of an expert witness." *Id.* at 4.

Plaintiff's objection is not properly before the Court. Pursuant to Federal Rule of Civil Procedure 72(a), a party may object to a non-dispositive pre-trial order of a magistrate judge within fourteen days after service of the order. Accordingly, Plaintiff's June 28, 2019 objection to Magistrate Judge Montenegro's October 23, 2018 order is untimely. In any event, Magistrate Judge Montenegro's analysis of the factors outlined in *Gorton v. Todd*, 793 F. Supp. 2d 1171 (E.D. Cal. 2011), is not "clearly erroneous or . . . contrary to law," Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A), and the Court would not reach a different conclusion on *de novo* review. Accordingly, the Court **OVERRULES** Plaintiff's fourth objection.

### V. Magistrate Judge Montenegro's Findings of Fact

Plaintiff objects that Magistrate Judge Montenegro "failed to place in proper form all factual dispute[s] relevant to Garcia's causes of action against defendants, in [her] resolution of defendants['] motions for summary judgment before the court or [her] determination of whether 'the evidence is such that a reasonable jury could return a

verdic[t] for the non-moving party.'" Objs. at 4. Although far from clear, Plaintiff appears to object to certain findings of fact reached by Magistrate Judge Montenegro. *See id.* at 4–17. The Court addresses each of these "relevant factual disputes" in turn.

### *A.  Use of Anti-Depressants for Pain Management*

Plaintiff's first factual dispute appears to be that Defendant Glynn, in performing the second-level review of Appeal RJD HC 11022222, learned that Plaintiff was diagnosed as suffering from chronic depression and knew that the 2009 pain management guidelines prohibited use of anti-depressants for pain management if the patient was suffering from depression, yet noted that Plaintiff has been prescribed adequate pain medication, including Indomethacin and Nortriptyline, which are anti-depressants. *See* Objs. at 4–6.

Plaintiff nowhere indicates that Magistrate Judge Montenegro failed to account for these facts. *Cf.* R&R at 9 ("Glynn noted that Plaintiff had been seen by an orthopedic specialist on September 22, 2011, was prescribed Gabapentin, Indomethacin, and Nortriptyline, had been examined by several doctors, and had been prescribed adequate pain medication.") (citing ECF No. 168-6 ¶ 14 & Ex. E). Rather, taking into consideration these facts, Magistrate Judge Montenegro concluded that "Plaintiff has failed to introduce evidence sufficient to show a genuine dispute of material fact as to whether [Glynn]'s decision was substantially motivated by Plaintiff's First Amendment conduct," R&R at 29, and, consequently, "Glynn has demonstrated that Plaintiff cannot carry his burden at trial of proving retaliatory motive."[3] *Id.* at 28.

On *de novo* review, the Court agrees with Magistrate Judge Montenegro. Accordingly, the Court **OVERRULES** Plaintiff's first factual objection.

### *B.  Falsification of Records Behind May 10, 2012 Cancellation of Gabapentin*

Plaintiff's second factual dispute appears to concern his contention that Defendants Velardi and Newton cancelled his Gabapentin prescription on May 10, 2012, in retaliation

---

[3] To the extent Plaintiff objects to Magistrate Judge Montenegro's legal analysis, the Court addresses that objection separately below. *See infra* Section VII.A.

for Plaintiff's May 7, 2012 filing of a habeas petition, and then drew bloodwork on May 16, 2012, when they knew that Plaintiff's blood serum Gabapentin levels would be low as a result of the cancellation of his prescription, to create a false rationalization that his Gabapentin was properly cancelled because the lab results supported that Plaintiff was not taking the Gabapentin as prescribed. *See* Objs. at 6–7.

Magistrate Judge Montenegro concluded, based on Defendant Velardi's sworn declaration, that Defendant "Velardi did not place any order to taper or stop Plaintiff's Gabapentin or other medication on May 10, 2012." R&R at 19 (citing ECF No. 160-3 ¶ 6). Instead, Defendant "Velardi only requested an order that a lab study be performed to help determined the Gabapentin levels in his system." *Id.* (citing ECF No. 160-3 ¶ 4). It was "[a]nother healthcare provided, Newton, [who] ordered the taper-off of Gabapentin." *Id.* (citing ECF No. 160-3 ¶ 6 & Ex. 4; ECF No. 168-7 ¶ 4 & Ex. A). Defendants Velardi and Newton both declared not to have conspired to deny Plaintiff medical care. *Id.* at 32–33 (citing ECF No. 160-3 ¶ 16; ECF No. 168-7 ¶ 9).

Plaintiff offers no medical records demonstrating that Defendant Velardi ordered Plaintiff's Gabapentin prescription stopped or showing that Defendants Velardi and Newton ever interacted in their treatment of Plaintiff. In short, Plaintiff offers no evidence supporting their alleged retaliation or conspiracy aside from the uncontested facts that Plaintiff filed a habeas petition on May 7, 2012, and that Defendant Newton cancelled Plaintiff's Gabapentin prescription on May 10, 2012. *See* R&R at 21, 24. As Magistrate Judge Montenegro correctly concludes, however, "circumstantial evidence of timing, without more, is insufficient" to establish retaliatory motive. *See id.* at 17 (citing *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995)); *see also id.* at 21, 24.

On *de novo* review, the Court therefore agrees with Magistrate Judge Montenegro and **OVERRULES** Plaintiff's second factual objection.

### C. *Defendant Velardi's Knowledge of Plaintiff's Habeas Petition*

Plaintiff's third factual dispute appears to be with Defendant Velardi's sworn statement that Plaintiff did not make her aware of his May 7, 2012 habeas petition at the

May 10, 2012 appointment. *See* Objs. at 7–8. Plaintiff contends that he informed her about the May 7, 2012 habeas petition and his motivations for filing it at the May 10, 2012 appointment and that he indicated that he would be filing civil litigation. *Id.* at 8.

Magistrate Judge Montenegro considered Plaintiff's sworn statement that he told Defendant Velardi about the habeas petition at the May 10, 2012 examination. *See* R&R at 21 (citing ECF No. 170 at 45). Magistrate Judge Montenegro noted, however, that "during his deposition, Plaintiff made contradictory claims and admitted he was not sure if Velardi was mentioned in his habeas petition at all, and that the crux of his retaliation claim was Velardi's action after he told her about his grievances and court actions." *Id.* (citing ECF No. 170 at 185). Magistrate Judge Montenegro did not err in taking Plaintiff's contradictory sworn testimony into account.

Further, even if Plaintiff did tell Defendant Velardi about the habeas petition at the May 10, 2012 examination, Plaintiff introduced no additional evidence tending to show that Defendant Velardi acted with a retaliatory motive. As Magistrate Judge Montenegro correctly concluded, "circumstantial evidence of timing alone is insufficient" to make the requisite showing to survive summary judgment. *See* R&R at 21 (citing *Pratt*, 65 F.3d at 808). Accordingly, the Court **OVERRULES** Plaintiff's third factual objection.

### D. *First-Level Review of Appeal RJD HC 12046389*

Although not entirely clear, Plaintiff's fourth factual dispute appears to concern Defendants Denbela and Walker's denials of Appeal RJD HC 12046389. *See* Objs. at 8–11. Magistrate Judge Montenegro carefully and thoroughly reviewed Defendants Denbela's and Walker's reviews of Appeal RJD HC 12046389. *See* R&R at 11–12. Aside from the denials themselves, Plaintiff introduced no additional evidence of retaliatory motive. As Magistrate Judge Montenegro properly concluded, "the denial of a grievance alone by itself does not amount to a constitutional violation." *Id.* at 25, 27 (citing *Dicey v. Hanks*, No. 2:14-cv-2018 JAM AC P, 2015 WL 4879627, at *5 (E.D. Cal. Aug 14, 2015)). Accordingly, the Court **OVERRULES** Plaintiff's fourth factual objection.

///

### E. Second-Level Review of Appeal RJD HC 12046389

Plaintiff's fifth factual dispute appears to concern the conclusions of the second-level review of RJD HC 12046389, specifically that Plaintiff received extensive medical examinations regarding his claimed medical issues and had no functional limitations in his wrists, that there was no medical indication for Gabapentin in Plaintiff's case, and that Plaintiff initially refused alternative medications but eventually agreed to try acetaminophen. *See* Objs. at 12–13.

Again, Magistrate Judge Montenegro carefully reviewed Defendant Seeley's second-level review of Appeal RJD HC 12046389. *See* R&R at 11–12, 27–28. Review of Defendant Seeley's second-level denial indicates that he relied upon medical records from Defendants Denbela and Velardi. *See* ECF No. 168-8 Ex. K at 88. Defendant Seeley therefore relied on the medical judgment of himself and Defendants Denbela and Velardi in denying Plaintiff's requests for Gabapentin and to discipline medical personnel denying him treatment out of retaliation. As Magistrate Judge Montenegro correctly concludes, to the extent Plaintiff attempts to prove a retaliatory motive based on speculation or the denial itself, these are insufficient to survive summary judgment. *See* R&R at 28 (citing *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014); *Dicey*, 2015 WL 4879627, at *5). The Court therefore agrees with Magistrate Judge Montenegro on *de novo* review.

To the extent Plaintiff claims that Defendant Velardi fabricated the underlying records to falsely indicate that Plaintiff rejected a prescription she offered for Tegretol, *see* Objs. at 12–13, Magistrate Judge Montenegro addressed Plaintiff's argument and found that the psychiatry progress note on which Plaintiff relies does not support his contention because that record appears to address only Plaintiff's psychiatric medications. *See* R&R at 21–22. On *de novo* review, the Court agrees with Magistrate Judge Montenegro. Accordingly, the Court **OVERRULES** Plaintiff's fifth factual objection.

### F. Appeal RJD HC 12046765

Finally, although not entirely clear, Plaintiff's sixth factual objection appears to concern Appeal RJD HC 12046765. Objs. at 13–17. Again, Magistrate Judge Montenegro

carefully reviewed Appeal RJD HC 12046765 at all levels of review. *See* R&R at 12–13; *see also id.* at 19, 26, 28–29. Having reviewed the R&R and underlying record, the Court agrees with Magistrate Judge Montenegro's analysis on *de novo* review and therefore **OVERRULES** Plaintiff's sixth factual objection.

## VI. Magistrate Judge Montenegro's Resolution of Disputed Facts

Plaintiff objects that Magistrate Judge Montenegro "erroneously contends to this court that Garcia argues he has provided evidence sufficient to show a dispute of material facts, specifically 'that moving defendants['] alleged falsification of his medical records show they acted in concert to retaliate against him for exercisin[g] his First Amendment rights.'" Objs. at 17. Specifically, Plaintiff contends that "he has set forth specific facts showing the existence of dispute[s] in material facts relevant to his retaliation and conspiracy causes of acti[on]," namely:

(1) "on 5/7/12, Garcia filed with the local court a Habeas Petition," *id.* at 17;

(2) "on 5/10/12 defendants cancel[led] Garcia's entire pain management treatment in the form of prescription for the medication Gabapentin," *id.*;

(3) "defendants['] alleged justifications for cancelling on 5/10/12 Garcia's treatment have been shown and proven to be false," *id.* at 17–18;

(4) "defendants . . . jointly and in concert t[ook] specific acts," *id.* at 18;

(5) "Departmental CPHCS staff carr[ied o]ut these defendants['] physicians ORDERS," *id.*;

(6) the Court may infer from this evidence that "defendants knowingly carr[ied o]ut these joined and in concert acts to cause Garcia to have low serum levels for the medication Gabapentin, . . . to ensure that they could retain and use a lab study report . . . as a 'cover[/]ruse' through which they could 'support their allegations to the Department CPHCS that Garcia was not taking his meds as prescribed . . . and/or justify to the Department the 5/10/12 cancellation of Garcia's treatment,'" *id.*;

(7) "defendants jointly and in concert, between 5/10/12 and 5/28/14, did routinely DENY Garcia's numerous requests made for pain management treatment," *id.* at 18–19;

(8) "defendants did not offer [Plaintiff] the medications NSAIDs or Tegretol as chronic pain treatment and . . . [Plaintiff] filed multiple grievances with the Department CPHCS," *id.* at 19;

(9) the Court may infer from this evidence that "defendants jointly and in concert knowingly made these false allegations to the Department CPHCS with the specific intent 'to DENY Garcia's formal request for treatment,'" *id.*; and

(10) "Garcia['s] evidence also establishes the existence of dispute[d] . . . material facts relevant to his causes of action for retaliation and conspiracy against defendants," as identified in his fifth objection. *Id.* at 19–20.

As for Plaintiff's first and second points, it is undisputed that Plaintiff filed a habeas petition on May 7, 2012. It is also undisputed that Plaintiff's Gabapentin prescription was cancelled on May 10, 2012, although the evidence reveals that it was Defendant Newton, not Defendant Velardi, who ordered the Gabapentin taper on May 10, 2012. *See* ECF No. 168-7 Ex. A at 9.

As for Plaintiff's third point, Magistrate Judge Montenegro rejected this argument. *See* R&R 10, 23. A urinalysis from January 4, 2012, showed that Plaintiff "had an incredibly high gabapentin level in his urine," which could be an indication that Plaintiff was "'divert[ing]' [his] gabapentin prescription[] by spitting it out, collecting large amounts of the medication, and then taking it to get 'high.'" ECF No. 168-7 ¶ 6. The May 16, 2012 blood test ordered by Defendant Velardi therefore did not serve as the justification for Defendant Newton's May 10, 2012 taper of Plaintiff's Gabapentin.

Magistrate Judge Montenegro also rejected Plaintiff's fourth point, noting that Defendants Velardi and Newton both declared that they did not work in agreement with each other or any other health care providers to deny Plaintiff medical care or to cancel his prescriptions. *See* R&R at 32–33 (citing ECF No. 160-3 ¶ 16; ECF No. 168-7 ¶ 9). Plaintiff introduced no concrete evidence to the contrary. *Id.* at 32–34.

As for Plaintiff's fifth point, it does not appear to be disputed that Plaintiff's Gabapentin was indeed tapered on May 10, 2012.

Regarding Plaintiff's sixth point, based on the above, it cannot be inferred that Defendants Velardi and Newton acted in concert to cancel Plaintiff's Gabapentin on May 10, 2012, and to falsify a test result on May 16, 2012, to justify the prior, retaliatory cancellation of his prescription. *See* R&R at 18–24, 32–34; *see also infra* Section VII.B.

With regard to Plaintiff's seventh point, Magistrate Judge Montenegro detailed the various medical appointments an appeals during the relevant time frame. *See* R&R at 8–13, 18–19, 23, 25, 26, 27, 28–29, 30. Although Plaintiff may have been denied the Gabapentin he sought, in the end, the records cumulatively show that Plaintiff was seen by medical providers who prescribed pain management in their medical judgment based on their review of Plaintiff, his test results, and his medical records.

Plaintiff's eighth point and tenth points are addressed above. *See supra* Section V.

Finally, as to Plaintiff ninth point, based on the above, it cannot be inferred that Defendants acted in concert to falsify Plaintiff's medical records to deny him medical treatment. *See* R&R at 18–31, 32–34; *see also infra* Section VII.B.

For all these reasons, the Court **OVERRULES** Plaintiff's sixth objection.

### VII. Magistrate Judge Montenegro's Recommendation That the Court Grant the Motions

Finally, Plaintiff objects that Magistrate Judge Montenegro "erroneously recommend[s] for this court to GRANT moving defendants['] summary judgment motions." Objs. at 20. Specifically, Plaintiff contends that he has introduced evidence sufficient to meet all elements of his remaining claims. *See generally id.* at 20–24.

#### *A. Second Cause of Action: First Amendment Retaliation*

Plaintiff objects that he has introduced evidence that "between 5/10/12 and 5/28/14 Garcia was left without any form of pain treatment in the form of known pain reliever[]s and to endure daily pain and suffering caused by those severely painful symptom[]s he was experiencing caused by his carpal tunnel condition," Objs. at 20, which "is the type of harm which is more than minimal." *Id.* at 21. Further, "defendants['] adverse actions were carr[ied o]ut because of Garcia's 5/7/12 filing of a Habeas Petition" and "defendants have

13

been shown to ha[ve] been clearly aware that Garcia had filed grievances with the Department CPHCS against them and accusing them of violating his civil rights during those times they either acted as his PCP and/or formally redressed his grievance appeal issues and requests for treatment." *Id.* Plaintiff's filing of his habeas petition and grievances were protected conduct, *id.* at 22, and "defendants['] adverse actions [are] the type of action which can chill a person of ordinary firmness from exercising his First Amendment rights," *id.*, and "can[]not be found to [have] had reasonably advanced a legitimate penological goal." *Id.*

To establish his First Amendment retaliation claim, Plaintiff must establish that Defendants acted with a retaliatory motive, meaning he must introduce evidence of a causal connection between Defendants' adverse actions and Plaintiff's protected conduct. *See Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). On *de novo* review, the Court agrees with Magistrate Judge Montenegro that Plaintiff has failed to adduce evidence that any of Defendants Velardi, Newton, Denbela, Walker, Seeley, Glynn, or Canlas acted with the requisite retaliatory motive. *See* R&R at 18–31.

Here, Plaintiff offers no evidence that Defendants Velardi and Newton acted with retaliatory motive aside from the temporal proximity of Defendant Velardi's ordering of the Gabapentin blood test and Defendant Newton's cancellation of Plaintiff's Gabapentin prescription on May 10, 2012, to the filing of Plaintiff's habeas petition on May 7, 2012. *See* ECF No. 170 at 30, 40. But, as Magistrate Judge Montenegro correctly concludes, *see* R&R at 21, 24, this evidence—without more—is insufficient to survive summary judgment. *See Pratt*, 65 F.3d at 808.

As for Defendants Denbela, Walker, Seeley, and Glynn, Plaintiff offers no evidence that they acted with retaliatory motive aside from their denials of Plaintiff's medical appeals. *See* ECF No. 170 at 23, 51–54, 56. Again, as Magistrate Judge Montenegro correctly concludes, *see* R&R at 25, 27, 28, 29, this evidence—without more—is insufficient to survive summary judgment. *See Dicey v. Hanks*, 2015 WL 4879627, at *5.
/ / /

Finally, as to Defendant Canlas, whose request for summary judgment Plaintiff does not oppose, there is no evidence that Defendant Canlas treated Plaintiff after the filing of Plaintiff's habeas petition in 2012. *See* ECF No. 168-4 ¶¶ 5–7. Consequently, as Magistrate Judge Montenegro correctly finds, *see* R&R at 31, "[i]t is impossible for Canlas to have been retaliating against Plaintiff in 2010 and 2011 for the exercise of [Plaintiff's] First Amendment rights in 2012."

For all these reasons, the Court **OVERRULES** Plaintiff's objection to Magistrate Judge Montenegro's recommendation that the Court grant summary judgment in Defendants' favor as to his second cause of action for First Amendment retaliation.

### B. Fourth Cause of Action: Conspiracy

Plaintiff objects "that defendants['] actions and those reasonable inference made when viewed in a light most favorable to the non-moving party [is] admissible evidence under the substantive law governing dispute of material fact from which it can be infer[red] the exist[e]nce of an agreement and/or meeting of the minds between moving defendants to violate Garcia's constitutional rights' from which a constitutional violation resulted." Objs. at 23. Specifically, "Garcia has shown facts demonstrating that defendants['] actions were 'unlikely to have been undertaken without an agreement,'" *id.*, and "has set forth facts sufficient to infer that defendant[s'] actions were the result of an understanding to accomplish the conspiracy objective," *i.e.*, "to cancel Garcia's medically necessary pain management treatment medications and deny any of his requests for said treatment via pretext and without cause." *Id.* at 23–24.

To sustain a claim of conspiracy under Section 1983, Plaintiff must show "an agreement or 'meeting of the minds' to violate constitutional rights." *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) (citing *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540–41 (9th Cir. 1989) (en banc)). On *de novo* review, the Court agrees with Magistrate Judge Montenegro that Plaintiff has failed to adduce evidence that any of Defendants Velardi, Newton, Denbela, Walker, Seeley, Glynn, or Canlas committed an

///

underlying constitutional violation, *see* R&R at 32 n.5; *see also supra* Section VII.A, or entered into an agreement to violate Plaintiff's constitutional rights. *See* R&R at 32–34.

Here, all Defendants have declared that they did not act in concert with one another and that their decisions were based on their examinations of Plaintiff and his medical records and accepted medical practices. *See* ECF No. 160-3 ¶ 16; ECF No. 168-4 ¶ 11; ECF No. 168-5 ¶ 5; ECF No. 168-6 ¶ 30; ECF No. 168-7 ¶ 9; ECF No. 168-8 ¶ 30; ECF No. 168-9 ¶ 12. On the other hand, Plaintiff produces no evidence—aside from his own speculation and conclusory allegations—to support the existence of any conspiracy. As Magistrate Judge Montenegro correctly concludes, *see* R&R at 33–34, this is insufficient for Plaintiff's conspiracy claim to survive summary judgment. *See Burns v. Cnty. of King*, 883 F.2d 819, 821 (9th Cir. 1989) (concluding that summary judgment was properly granted on § 1983 conspiracy claim where the plaintiff's "claims against all the defendants . . . were supported only by conclusory allegations"). Accordingly, the Court **OVERRULES** Plaintiff's objection to Magistrate Judge Montenegro's recommendation that the Court grant summary judgment in Defendants' favor as to his fourth cause of action for conspiracy.

## CONCLUSION

In light of the foregoing, the Court **OVERRULES** Plaintiff's Objections (ECF No. 176), **ADOPTS** in its entirety Magistrate Judge Ruth Bermudez Montenegro's Report and Recommendation (ECF No. 173), and **GRANTS** Defendants' Motions for Summary Judgment (ECF Nos. 160, 168). Because this Order concludes the litigation in this matter, the Clerk of Court **SHALL CLOSE** the file.

**IT IS SO ORDERED.**

Dated: August 19, 2019

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge